1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   VALENTINA PERALTA HOFFMAN,

11          Plaintiff,                    No. CIV S-10-2377 DAD

12     vs.

13   MICHAEL J. ASTRUE,                   ORDER
     Commissioner of Social Security,
14
            Defendant.
15   _____/

16          This social security action was submitted to the court without oral argument for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, plaintiff's motion is denied, defendant's motion is

19   granted, and the decision of the Commissioner of Social Security (Commissioner) is affirmed.

20                        **PROCEDURAL BACKGROUND**

21          On June 9, 2008, plaintiff filed an application for Disability Insurance Benefits

22   (DIB) under Title II of the Social Security Act (the Act), alleging disability beginning on January

23   1, 2004.[1]  (Transcript (Tr.) at 34-35, 101.)  Plaintiff's application was denied initially on October

24   09, 2008, and upon reconsideration on December 30, 2008.  (Id. at 50-53, 64-68.)  A hearing was

25   _____

26          [1]  Plaintiff also filed an application for Supplemental Security Income, ("SSI"), however
     plaintiff is not contesting the Commissioner's determination that she is not eligible for SSI.

1   held before an Administrative Law Judge (ALJ) on November 17, 2009.  (Id. at 854-918.)

2   Plaintiff was represented by counsel and testified at the administrative hearing.  In a decision

3   issued on November 25, 2009, the ALJ found that plaintiff was not disabled.  (Id. at 21.)  The

4   ALJ entered the following findings:

> 1.  The claimant last met the insured status requirements of the
> Social Security Act on December 31, 2007.
>
> 2.  The claimant did not engage in substantial gainful activity
> during the period from her alleged onset date of January 1, 2004,
> through her date last insured of December 31, 2007 (20 C.F.R. §
> 404.1571, *et seq.*).
>
> 3.  Through the date of last insured, the claimant had the following
> severe impairments: fibromyalgia, mild degenerative disc disease
> of the cervical spine with cervical radiculopathy, and mild carpal
> tunnel syndrome (20 C.F.R. § 404.1520(c)).
>
> 4.  Through the date last insured, the claimant did not have an
> impairment or combination of impairments that met or medically
> equaled one of the listed impairments in 20 C.F.R. Part 404,
> Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and
> 404.1526).
>
> 5.  After careful consideration of the entire record, I find that,
> through the date last insured, the claimant had the residual
> functional capacity to perform light work as defined in 20 C.F.R. §
> 404.1567(b) except she can lift and carry ten pounds frequently and
> twenty pounds occasionally, with occasional climbing, balancing,
> stooping, kneeling, crouching and crawling, and occasional use of
> the dominant right upper extremity to handle and finger small
> objects.  The claimant is limited to simple, routine, one to two-step
> work equating to unskilled work.
>
> 6.  Through the date last insured, the claimant was unable to
> perform any past relevant work (20 C.F.R. § 404.1565).
>
> 7.  The claimant was born on July 25, 1955, and was fifty-two
> years old, which is defined as an individual closely approaching
> advanced age, on the date last insured (20 C.F.R. § 404.1563).
>
> 8.  The claimant has at least a high school education and is able to
> communicate in English (20 C.F.R. § 404.1564).
>
> 9.  Transferability of job skills is not material to the determination
> of disability because using the Medical-Vocational Rules as a
> framework supports a finding that the claimant is "not disabled,"
> whether or not the claimant has transferable job skills (See SSR

2

1    82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

2    10.  Through the date of last insured, considering the claimant's
     age, education, work experience, and residual functional capacity,
3    there were jobs that existed in significant numbers in the national
     economy that the claimant could have performed (20 C.F.R. §§
4    404.1569 and 404.1569(a)).

5    11.  The claimant was not under a disability, as defined in the
     Social Security Act, at any time from January 1, 2004, the alleged
6    onset date, through December 31, 2007, the date last insured (20
     C.F.R. § 404.1520(g)).

7

8    (Id. at 16-21.)

9           On July 27, 2010, the Appeals Council denied plaintiff's request for review of the

10   ALJ's decision.  (Id. at 9-9b.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by

11   filing the complaint in this action on September 3, 2010.

12                                    **LEGAL STANDARD**

13          The Commissioner's decision that a claimant is not disabled will be upheld if the

14   findings of fact are supported by substantial evidence in the record as a whole and the proper

15   legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

16   (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

17   The findings of the Commissioner as to any fact, if supported by substantial evidence, are

18   conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such

19   relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

20   Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones

21   v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401

22   (1971)).

23          A reviewing court must consider the record as a whole, weighing both the

24   evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d

25   at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

26   supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

substantial evidence supports the administrative findings, or if there is conflicting evidence

supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,

Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d

1335, 1338 (9th Cir. 1988).

        In determining whether or not a claimant is disabled, the ALJ should apply the

five-step sequential evaluation process established under Title 20 of the Code of Federal

Regulations, Sections 404.1520 and 416.920.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?
> If so, the claimant is found not disabled.  If not, proceed to step
> two.

> Step two:  Does the claimant have a "severe" impairment?  If so,
> proceed to step three.  If not, then a finding of not disabled is
> appropriate.

> Step three:  Does the claimant's impairment or combination of
> impairments meet or equal an impairment listed in 20 C.F.R., Pt.
> 404, Subpt. P, App. 1?  If so, the claimant is automatically
> determined disabled.  If not, proceed to step four.

> Step four:  Is the claimant capable of performing his past work?  If
> so, the claimant is not disabled.  If not, proceed to step five.

> Step five:  Does the claimant have the residual functional capacity
> to perform any other work?  If so, the claimant is not disabled.  If
> not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

        The claimant bears the burden of proof in the first four steps of the sequential

evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

(9th Cir. 1999).

/////

/////

1      **APPLICATION**

2      Plaintiff argues that the ALJ committed the following errors in finding her not to

3  be disabled: (1) the ALJ's finding that the plaintiff's mental impairments were not severe is not

4  supported by substantial evidence; (2) the ALJ's finding that the objective medical evidence of

5  record was generally unremarkable is not supported by substantial evidence; (3) the ALJ's

6  finding that plaintiff's daily activities supports the conclusion that plaintiff can perform basic

7  work functions is not supported by substantial evidence; (4) the ALJ's limited discussion of the

8  third-party testimony constitutes legal error; (5) the ALJ's finding that plaintiff's overall

9  treatment has been somewhat limited is not supported by substantial evidence; (6) the

10 hypothetical questions posed by the ALJ to the vocational expert were not sufficient as a matter

11 of law.  Each of these arguments are addressed below.[2]

12 **I.    Mental Impairments**

13     Plaintiff contends that in evaluating her mental impairments the ALJ failed to

14 perform the "special technique" set forth in 20 C.F.R. 404.1520a and failed to adequately address

15 plaintiff's allegations of mental impairment.

16         In step two of the disability determination, an ALJ must determine
        whether the claimant has a medically severe impairment or
17         combination of impairments.  In making this determination, an
        ALJ is bound by 20 C.F.R. § 404.1520a.  That regulation requires
18         those reviewing an application for disability to follow a special
        psychiatric review technique.  20 C.F.R. § 404.1520a.
19         Specifically, the reviewer must determine whether an applicant has
        a medically determinable mental impairment, id. § 404.1520a(b),
20         rate the degree of functional limitation for four functional areas, id.
        § 404.1520a(c), determine the severity of the mental impairment
21         (in part based on the degree of functional limitation), id. §
        404.1520a(c)(1), and then, if the impairment is severe, proceed to
22         step three of the disability analysis to determine if the impairment
        meets or equals a specific listed mental disorder, id. §
23         404.1520a(c)(2).

24 /////

25 _____

26     [2]  In many respects plaintiff's arguments are disjointed and conclusory.  Accordingly, the
   court has attempted to restate plaintiff's arguments in the clearest possible manner.

> At the first two levels of review, this technique is documented in a Psychiatric Review Technique Form ("PRTF"). Id. § 404.1520a(e).  At hearings before an ALJ or the Appeals Council, however, the Commissioner must "document application of the technique in the decision."  Id.  Specifically, "the written decision must incorporate the pertinent findings and conclusions based on the technique" and " must include a specific finding as to the degree of limitation in each of the functional areas." Id. § 404.1520a(e)(4) (emphasis added); see also Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50, 746, 50,757-58 (Aug. 21, 2000) (to be codified at 20 C.F.R. pt. 404 & 416) ("The primary purpose of the final rules is to describe the technique, as distinct from the [PRTF], and to require the use of the technique in all determinations and decisions at all levels of the administrative review process...."). In other words, the regulations contemplate that written decisions at the ALJ and Appeals Council levels should contain a "narrative rationale," instead of the "checklist of . . . conclusions" found in a PRTF.  See 65 Fed. Reg. at 50,757-58.

Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011).

Here, the ALJ findings with respect to plaintiff's mental impairments were set forth in the following paragraph of the decision:

> As for psychological impairments, a State agency psychological consultant assessed in September 2007 that there was insufficient evidence with which to assess any impairments or any functional limitations (Ex. 11F & Ex. 12F).  This determination was affirmed by another State agency psychological consultant in December 2008 (Ex. 18F).

(Tr. at 19.)  The ALJ's written opinion failed to document application of the special psychiatric review technique.  Specifically, the ALJ failed to make a specific finding as to the degree of limitation in each of the four functional limitation areas discussed above.

However, a "[f]ailure to document the application of the technique in the opinion requires reversal if the plaintiff had a colorable claim of a mental impairment."  Warren v. Astrue, No. 2:10-cv-3102-SU, 2012 WL 864543, at *4 (D. Or. Mar. 13, 2012) (emphasis added).  See Keyser, 648 F.3d at 726 ("An ALJ's failure to comply with 20 C.F.R. § 404.1520a is not harmless if the claimant has a colorable claim of mental impairment."); Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000) ("Our decision is consistent with cases that have held that the

1   failure to fill out the PRTF does not require reversal in situations where there is no viable claim

2   of mental impairment."). "A colorable claim is one which is not wholly insubstantial,

3   immaterial, or frivolous." Warren, 2012 WL 864543, at 4. See also McBride Cotton & Cattle

4   Corp. v. Veneman, 290 F.3d 973, 981 (9th Cir. 2002) (quoting Cassim v. Bowen, 824 F.2d 791,

5   795 (9th Cir. 1987)). Here, plaintiff has failed to point to any evidence that she had a colorable

6   claim of mental impairment.

7           Plaintiff argues that the fact that mental impairments are not as easily identifiable

8   as physical impairments does not relegate mental impairments to second class status in terms of

9   assessing the limitations imposed thereby. The court is mindful that, "[p]sychiatric impairments

10  are not as readily amenable to substantiation by objective laboratory testing as are medical

11  impairments and consequently, the diagnostic techniques employed in the field of psychiatry may

12  be less tangible than those in the field of medicine." Hartman v. Bowen, 636 F. Supp. 129,

13  131-32 (N.D. Cal. 1986) (citing Lebus v. Harris, 526 F. Supp. 56, 60 (N.D. Cal. 1981)). "Thus,

14  when mental illness is the basis of a disability claim . . . clinical and laboratory data may consist

15  of the diagnoses and observations of professional psychiatrists and psychologists." Id. (internal

16  citations omitted).

17          Here, however, plaintiff has failed to point to any diagnosis or observation with

18  respect to a mental impairment in her case made by a treating or examining, psychiatrist,

19  psychologist, or physician. Moreover, it appears that the only physicians to opine on plaintiff's

20  mental functional capacity limitations are the two state agency physicians, who determined after

21  reviewing plaintiff's medical record that there was "insufficient evidence" of any mental

22  impairment. (Tr. at 323, 403.) The court therefore finds that plaintiff has not demonstrated that

23  she presented any colorable claim of mental impairment.

24          Accordingly, plaintiff is not entitled to relief with respect to her claim of error

25  with respect to the ALJ's finding that her mental impairments were not severe.

26  /////

**II.     Objective Medical Evidence**

Plaintiff takes issue with the ALJ's characterization of her medical record as unremarkable, arguing that her medical record is in fact remarkable for her consistent effort to seek medical help for her symptoms of chronic pain.  In this regard, plaintiff argues that no objective medical tests exists to confirm a diagnosis of fibromyalgia.

As the Ninth Circuit Court of Appeals has noted, "[f]ibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms." Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004).  Although there is a set of diagnostic criteria for fibromyalgia, there are no laboratory tests that can confirm the diagnosis.[3]  Id. at 589-90; Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 872 (9th Cir. 2004); Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001).  "Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." Benecke, 379 F.3d at 589-90.

Here, however, the ALJ acknowledged that plaintiff suffered from fibromyalgia. (Tr. at 19.)  Plaintiff argues that the ALJ, nonetheless, improperly discounted her testimony regarding the severity of her symptoms.

It is well established that once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely because those symptoms are unsupported by objective medical

---

[3]  According to the Mayo Clinic, the guidelines established by the American College of Rheumatology in 1990 may still be used by researchers studying fibromyalgia, but fibromyalgia symptoms can come and go.  Less stringent guidelines have been developed for doctors to use in general practice.  The newer diagnostic criteria include widespread pain lasting at least three months and no other underlying condition that might be causing the pain.  Mayo Found. for Med. Educ. & Research, Fibromyalgia, "Tests and diagnosis" http://www.mayoclinic.com/health/ fibromyalgia/DS00079/DSECTION=tests-and-diagnosis (last visited Mar. 22, 2012).

1  evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119

2  F.3d 789, 792 (9th Cir. 1997).  In evaluating a claimant's subjective testimony regarding the

3  severity of her symptoms, the ALJ may, of course, consider the presence or absence of

4  supporting objective medical evidence, along with other factors.  Bunnell v. Sullivan, 947 F.2d

5  341, 346 (9th Cir. 1991) (en banc); see also Smolen, 80 F.3d at 1284.  However, "'the ALJ can

6  reject the claimant's testimony about the severity of her symptoms only by offering specific, clear

7  and convincing reasons for doing so.'"  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir.

8  2007) (quoting Smolen, 80 F.3d at 1281).  See also Light, 119 F.3d at 792.  Thus, absent

9  affirmative evidence of malingering, the reasons for rejecting a claimant's testimony must be

10  clear and convincing.  Morgan, 169 F.3d at 599.

11         Here, the ALJ found that plaintiff's medically determinable impairments could

12  reasonably be expected to cause some of her alleged symptoms.  (Tr. at 18.)  Accordingly, the

13  ALJ was required to evaluate the intensity, persistence, and limiting effect of plaintiff's

14  symptoms to determine the extent to which they limited her ability to engage in basic work

15  activities.  In this regard, the ALJ engaged in a detailed review of plaintiff's medical record.  (Tr.

16  at 18.)  The ALJ noted, in part, that tests conducted in December of 2005 for ANA and

17  reheumatoid factor, as well for inflammatory markers were "unremarkable."  (Id.)  Moreover, the

18  ALJ noted that in February of 2006, plaintiff reported to her doctor that she was feeling better

19  and that her pain had decreased.  (Id.)  Finally. the ALJ observed that in August of 2006, plaintiff

20  reported that her sleep was improved as a result of medication.  (Id.)

21         The ALJ also noted that Dr. Peril, a State agency medical consultant, determined

22  in October of 2008, after an extensive review of plaintiff's medical record, that plaintiff could lift

23  and carry twenty pounds occasionally and ten pounds frequently, stand and walk for a total of six

24  hours in an eight-hour workday and sit for six hours in an eight-hour workday, with no

25  limitations for pushing and pulling.  (Id. at 18-19.)  Dr. Peril also opined that plaintiff retained

26  the ability to occasionally climb ramps, stairs, ladders, ropes, and scaffolding, and occasionally

1  balance, stoop, kneel, crouch, and crawl.  (Id. at 19.)  Dr. Peril's assessment was affirmed in

2  December 2008 by another State agency medical consultant.  (Id.)  Finally, the ALJ noted that

3  plaintiff's medical record reveals relatively infrequent trips to the doctor with respect to her

4  disabling symptoms, and that the record does not contain any opinion from a treating or

5  examining physician indicating that plaintiff is disabled or even that plaintiff has limitations

6  greater than those indicated by the residual foundational capacity found by ALJ.  (Id.)

7           The court finds that the ALJ made specific findings in support of his reasons for

8  discounting plaintiff's testimony regarding the severity of her symptoms to the extent plaintiff

9  stated she suffered from limitations inconsistent with those assessed in the residual functional

10  capacity found by the ALJ.  The reasons given by the ALJ for discounting plaintiff's testimony in

11  this regard are based on consideration of matters as permitted under the applicable law and

12  regulations.  See 20 C.F.R. § 404.1529(a) ("We will consider all of your statements about your

13  symptoms, such as pain, and any description you . . . may provide about how the symptoms affect

14  your activities of daily living and your ability to work."); Batson v. Comm'r of Social Sec.

15  Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that the ALJ properly relied on objective

16  medical evidence and medical opinions in determining credibility); Meanel, 172 F.3d 104, 115

17  (9th Cir. 1999) (noting that a likely consequence of debilitating pain is inactivity and that a likely

18  consequence of inactivity is muscular atrophy); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir.

19  1995) (holding that the ALJ may consider the conservative nature of treatment in evaluating a

20  claimant's subjective complaints); Bunnell, 947 F.2d at 346-47 (including effectiveness of

21  medication, treatment other than medication, the claimant's daily activities, and ordinary

22  techniques of credibility evaluation among the factors that may be considered by the ALJ in

23  assessing the credibility of allegedly disabling subjective symptoms).

24           For these reasons, the court finds that the ALJ discounted plaintiff's testimony

25  regarding the extent of her limitations on permissible grounds and did not arbitrarily discredit

26  plaintiff's testimony regarding her subjective symptoms.  The reasons given by the ALJ for his

10

1  treatment of plaintiff's testimony are clear and, because they are properly supported by the

2  record, convincing.  Therefore, plaintiff is not entitled to summary judgment in her favor with

3  respect to her argument that the ALJ erred in discounting her testimony regarding her subjective

4  complaints and functional limitations without convincing reasons for so doing.

5  **III.   Daily Activities**

6          Plaintiff contends that the ALJ concluded that her daily activities were

7  "inconsistent" with her claimed symptoms, and thus, that plaintiff could perform basic work

8  functions.  (Pl.'s MSJ (Doc. No. 20) at 10.)

9          The full quote addressing this subject and found on the page of the ALJ's decision

10 cited by plaintiff, however, reads:

11              After careful consideration of the evidence, I find that the
                claimant's medically determinable impairments could reasonably
12              be expected to cause some of the alleged symptoms; however, the
                claimant's statements concerning the intensity, persistence and
13              limiting effects of these symptoms are not credible to the extent
                they are inconsistent with the above residual functional capacity
14              assessment.

15 (Tr. at 18.)  In his decision the ALJ merely recounted plaintiff's reported daily activities.  (Id. at

16 19.)  The ALJ made no mention of any inconsistency between plaintiff's daily activities and her

17 reported symptoms.  Moreover, it is permissible for an ALJ to take into consideration the

18 claimant's daily activities in assessing the credibility of allegedly disabling subjective symptoms.

19 See Bunnell, 947 F.2d at 346-47 (including effectiveness of medication, treatment other than

20 medication, the claimant's daily activities, and ordinary techniques of credibility evaluation

21 among the factors that may be considered by the ALJ in assessing the credibility of allegedly

22 disabling subjective symptoms).

23          Accordingly, plaintiff's argument that the ALJ erred in finding that her daily

24 activities supported the conclusion that she can perform basic work functions, is not persuasive.

25 /////

26 /////

**IV.     Third-Party Testimony**

        The testimony of lay witnesses, including family members and friends, reflecting

their own observations of how the claimant's impairments affect her activities must be

considered and discussed by the ALJ.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

2006); Smolen v. Chater, 80 F.3d at 1273, 1288 (9th Cir. 1996); Sprague, 812 F.2d at 1232.

Persons who see the claimant on a daily basis are competent to testify as to their observations.

Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v.

Shalala, 12 F.3d 915, 918-19 (9th Cir.1993).  If the ALJ chooses to reject or discount the

testimony of a lay witness, he or she must give reasons germane to each particular witness in

doing so.  Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.  The mere fact that a lay

witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony.

Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289.  Nor does the fact that medical records

do not provide corroboration serve as a proper basis for rejecting such testimony.  Smolen, 80

F.3d at 1289.  It is especially important for the ALJ to consider lay witness testimony from third

parties where a claimant alleges symptoms not supported by medical evidence in the file and the

third parties have knowledge of the claimant's daily activities.  20 C.F.R. § 404.1513(e)(2); SSR

88-13.

        Questions of credibility and the resolution of conflicts in the testimony are usually

deemed functions solely of the Commissioner.  Morgan, 169 F.3d at 599.  The determination of

credibility is said to be a function of the ALJ acting on behalf of the Commissioner.  Saelee v.

Chater, 94 F.3d 520, 522 (9th Cir. 1996).  As a general rule, an ALJ's assessment of credibility

should be given great weight.  Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  Ordinary

techniques of credibility evaluation may be employed, and the adjudicator may take into account

prior inconsistent statements or a lack of candor by the witness.  Fair v. Bowen, 885 F.2d 597,

604 n. 5 (9th Cir. 1989).

/////

1    Here, plaintiff asserts that the ALJ's limited discussion of the testimony of

2    plaintiff's husband constituted legal error.  However, the ALJ did discuss the testimony of

3    plaintiff's husband in his decision, stating:

4              The claimant's husband testified that his wife is sore after
               sweeping one room.  He said that when she folds clothes she will
5              experience soreness and stay in bed for the rest of the day.  He
               stated that he has been doing the laundry and housekeeping since
6              2004.

7    (Tr. at 18.)  The ALJ also noted in his decision that:

8              As for daily activities, the claimant's husband indicated that she
               needs and gets a lot of rest (Ex. 6E).  She prepares quick meals,
9              engages in light housecleaning, drives a car, and goes grocery
               shopping (Ex. 6E, pp. 2-5 & Ex. 9E).  She is able to handle the
10             family finances (Ex. 6E, p. 5 & Ex. 9E, p. 7).   The claimant goes
               to church on occasion, visits with a social group from church, and
11             keeps in contact with family by telephone (Ex. 6E, p. 6 & Ex. 9E,
               p. 8).
12

13   (Id. at 19.)

14   Plaintiff contends that the testimony of plaintiff's husband "was more probative

15   than the ALJ credits."  (Pl.'s MSJ (Doc. No. 20) at 11.)  However, plaintiff fails to explain how

16   the ALJ's acknowledgment of this testimony of plaintiff's husband establishes that the ALJ

17   either discounted or rejected that testimony.  In this regard, it appears that the ALJ properly

18   summarized and acknowledged the testimony provided by plaintiff's husband.  Moreover,

19   plaintiff fails to explain how the ALJ's treatment of this testimony is in any way inconsistent

20   with the ALJ's residual functional capacity determination.

21   Accordingly, plaintiff's argument that the ALJ's limited discussion of third-party

22   testimony constituted legal error will be rejected.

23   **V.   <u>Overall Treatment</u>**

24   Plaintiff contends that the ALJ's finding that her overall treatment has been

25   somewhat limited is not supported by substantial evidence.  Specifically, plaintiff argues that her

26   medical record establishes that she saw multiple doctors, physical therapists, chiropractors and

1   acupuncturists in seeking "relief from her symptoms." (Pl.'s MSJ (Doc. No. 20) at 11-12.)

2          In his decision the ALJ stated, "I give weight to treating sources' diagnosis of

3   fibromyalgia; however, her overall treatment has been somewhat limited." (Tr. at 19.) In this

4   regard, it is not clear if the ALJ was characterizing plaintiff's entire medical history of treatment

5   as being somewhat limited, as plaintiff asserts, or was referring only to the history of treatment

6   provided by the treating sources who diagnosed plaintiff as suffering from fibromyalgia.

7          In any event, the ALJ went on to state:

8              Nevertheless, the limitations assessed in the residual functional
               capacity in this decision reasonably account for her symptoms as
9              well as restrict her to simple work that account for her reported
               difficult concentrating. I also afforded a right hand limitations
10             concerning fine manipulation due to CTS, even though this is mild
               per testing and she retains 5/5 grip strength. The claimant retains
11             normal motor function and previously admitted walking two miles
               three times per week.
12

13  (Tr. at 19.) Thus, even if the ALJ's characterization of plaintiff's overall medical treatment as

14  being somewhat limited was incorrect, plaintiff has not explained or established how that error

15  could have altered the ALJ's residual functional capacity determination. Accordingly, even if the

16  ALJ characterization was in error, that error was harmless. The Ninth Circuit has held that errors

17  by an ALJ that do not affect the ultimate disability determination are harmless, and a reviewing

18  court may not reverse and remand an ALJ's decision based on harmless errors. Stout v. Comm'r

19  of Soc. Sec., 454 F.3d 1050, 1055 (9th Cir. 2006) ("We have also affirmed under the rubric of

20  harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's

21  ultimate disability conclusion."); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A

22  decision of the ALJ will not be reversed for errors that are harmless.").

23         For the reasons stated above, plaintiff is not entitled to relief with respect to her

24  claim that the ALJ erred in finding that her overall treatment has been somewhat limited.

25  /////

26  /////

14

VI.     **Adequate Hypothetical Question**

Plaintiff argues that the hypothetical questions posed by the ALJ to the vocational expert (VE) were not legally adequate.

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a).  The assessment of RFC must be "based on all the relevant evidence in [the claimant's] case record."  Id.  See also Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001).  Here, the court has found no reversible error with regard to the ALJ's treatment of the relevant evidence and therefore also finds no error in the ALJ's assessment of plaintiff's RFC.  The ALJ's hypothetical questions posed to the VE were properly based on the ALJ's RFC assessment and appear to have been supported by substantial evidence in the record.  Specifically, the ALJ's hypothetical questions fairly incorporated the limitations assessed in Dr. Peril's opinion, the only physician to render an opinion as to plaintiff's limitations.  (Compare Tr. at 339-42 with Tr. at 905-12.)

Because the ALJ's determination of plaintiff's RFC was proper and his hypothetical questions posed to the VE based upon that RFC determination were not deficient, plaintiff's challenge to those hypothetical questions fails.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (ALJ may rely on testimony of vocational expert given in response to hypothetical questions that contain all the limitations found credible by the ALJ and supported by substantial evidence in the record).

**CONCLUSION**

The court has found that plaintiff is not entitled to summary judgment in her favor with respect to any of her arguments.

Accordingly, IT IS HEREBY ORDERED that:

/////

/////

/////

15

1.  Plaintiff's motion for summary judgment (Doc. No. 20) is denied;

2.  Defendant's cross-motion for summary judgment (Doc. No. 24) is granted; and

3.  The decision of the Commissioner of Social Security is affirmed.

DATED: March 24, 2012.

_____

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1/orders.soc sec/hoffman2377.order

16